## BURGESS SULPHITE FIBRE CO. v. GAGNE.

(Circuit Court of Appeals, First Circuit. February 12, 1919.)

No. 1363.

1. MASTER AND SERVANT ⊛150(5)—INJURY TO SERVANT—UNSAFE PLACE TO
	WORK.

    The use by a manufacturing company of removable steps leading down
to the floor of a boiler room from an outer door, without warning to
employés that they were removable and were frequently removed for
cleaning the floor, *held* negligence, which rendered it liable for injury to
an employé who unknowingly stepped through the door when they were
not in place.

2. MASTER AND SERVANT ⊛201(7)—INJURY TO SERVANT—NEGLIGENCE OF FEL-
	LOW SERVANT.

    That negligence of a fellow servant may have contributed to injury
of an employé does not relieve the master from liability for his own
negligence, which was the primary cause.

3. MASTER AND SERVANT ⊛291(1)—INJURY TO SERVANT—INSTRUCTIONS.

    Instructions in an action for injury to a servant *held* not erroneous,
in view of the evidence.

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action at law by George H. Gagne against the Burgess Sulphite Fibre Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George F. Morris, of Lancaster, N. H. (Sullivan & Daley, of Berlin, N. H., and Drew, Shurtleff, Morris & Oakes, of Lancaster, N. H., on the brief), for plaintiff in error.

Alexander Murchie, of Concord, N. H. (Hollis & Murchie, of Concord, N. H., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a writ of error from a judgment recovered by George A. Gagne in the District Court for New Hampshire against the Burgess Sulphite Fibre Company in an action for personal injuries sustained December 27, 1910, while in the employ of that company. The plaintiff is a citizen of New Hampshire and the defendant a corporation organized under the laws of the state of Maine.

In its assignments of error the Fibre Company complains that the court erred in denying its motion for a directed verdict, in the admission of certain testimony, in instructions given to the jury, and in refusing a requested instruction.

At the defendant's request the plaintiff was ordered to specify the acts of neglect on which he relied, and in compliance therewith stated:

"The plaintiff's injury was caused by the absence or insufficiency of certain steps and the insufficiency of a certain door leading into the wood boiler room from the gangway. The defendant failed to furnish the plaintiff a safe place to work and also failed to make reasonable rules and regulations."

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The plaintiff was employed by the defendant as its chief engineer and the evidence disclosed that his duties required him to supervise the operation and repair of all the engines of the company througout its extensive plant; that among the engines under his supervision was a forced draft engine, located in what was known as the wood boiler room; and that it was while he was on his way to this engine that he was injured. The direct route for him to reach this engine was through a passageway between the boiler room building and the time office building, leading to a gangway or loading platform, and thence through a door and down some steps into the boiler room. He was entering this door at the time he was injured. It was a door commonly used by the employés of the company for entering and leaving the boiler room. It was a blind door—that is, it had no window in it—and swung inwardly. It was rigged with a pulley attachment carrying a heavy weight to keep it closed. From the threshold of the door to the floor of the boiler room was a drop of 18 to 24 inches, and wooden steps with two risers had been placed there. They were unsecured, and at the time of the accident had been removed. When the plaintiff undertook to enter the boiler room, he grasped the handle of the door and gave a hard push. At the same time a workman from the inside gave the door a pull, causing the plaintiff to enter more quickly than he had anticipated; and instead of his foot meeting the steps, which had been removed, it struck the floor below. He retained his grasp on the handle without falling, but was swung around in such a manner as to wrench his leg and back and displace his sacro-iliac joint, causing a severe injury. The plaintiff did not know that the steps had been removed, or that they were so constructed that they might be removed. Although they were fairly heavy steps, they were not fastened, and were often removed on Sundays for the purpose of taking out ashes that accumulated on the floor of the boiler room around the steps; but plaintiff did not know this. The accident occurred on Tuesday. The preceding day the mill was not in operation, as it was set apart for celebrating Christmas.

In view of the state of the proof, we think the jury might properly find that the defendant was at fault in failing to provide permanent steps, or, in case they were to be removed, in failing to establish reasonable regulations for the safety of its employés; that the plaintiff was without fault and did not assume the risk; and that the cause of his injury was the defendant's failure in the particulars above mentioned.

[2] The defendant complains that the court erred in refusing to give the following instruction to the jury as to the removal of the steps:

"If you find it was removed by the negligence of a fellow servant, and by that I mean any employé of the defendant, the plaintiff cannot recover."

This request was properly refused for the reason that it assumed that the evidence did not warrant the jury in finding the defendant at fault, even though the steps had been removed through the negligence of a fellow servant. The fact that negligence of a fellow serv-

ant may have contributed to cause the accident would not excuse the fault of the defendant (Matthews v. Clough, 70 N. H. 600, 49 Atl. 637; Vaisbord v. Mfg. Co., 74 N. H. 470, 473, 69 Atl. 520); and, there being evidence from which the jury could find that the defendant was negligent, the request could not properly have been given.

[3] The defendant also contends that the court erred in charging the jury as follows:

"If you come to the question in respect to the plank steps, the first question that would naturally arise would be whether the plaintiff under the circumstances was in the exercise of due care. I do not think you will have much trouble on that phase of the case, because the plaintiff himself says that he had never seen the steps out of place, that he was going along in the usual way, acting upon the idea that the situation was safe, and that as he opened the door, somebody pulled on the other side at the same time and that he stepped down and fell, because there was no step on which his foot would rest and hold his weight. While I am not going to say that you should find that question of fact one way or another, there is no substantial controversy about it and you probably will have no difficulty in finding that he was in the exercise of reasonable care if the situation was as he explained it. If you should find—and I leave it to you to find whether he was in the exercise of due care as he approached this door—then the question will be, Was the step there?"

The ground of exception to this portion of the change was that it did not leave open the question whether any one pulled the door from the inside at the time the plaintiff entered and whether in consequence of that he fell without seeing where he was going. To meet defendant's objection in this respect, the court further charged the jury as follows:

"Counsel for the defendant thinks that I stated his contention incorrectly in respect to the plaintiff's care. He thinks that I did not state his position correctly in saying that there was no substantial contention that the plaintiff was careless. I did not intend to say that. I meant to say that upon the evidence you would probably not be troubled much upon that question, provided the story of the plaintiff as to his approach was accepted as the correct one, and that is all the evidence there is on that branch of the case, and I think that is what I did say, but Mr. Morris thinks that I said that there was no substantial contention against that. He says that he does contend, and argues that the plaintiff was careless, in the first place, that the plaintiff did not fall as he said he did, and if he did fall that he was careless in not looking, and even if the steps were not there that due care required that he should have looked before opening the door and stepping; so I leave the question with you to determine it."

To the latter statement of the court the defendant also excepted, on the ground he had there told the jury that all the evidence there was on this branch of the case was, what the plaintiff had stated. We think that the first instruction complained of, if erroneous in any respect, was fully taken care of when the court later told the jury that the defendant did contend that the plaintiff was careless and pointed out the particulars wherein it so contended. Although the court commented upon the weight of the evidence bearing upon the question of contributory negligence, he nevertheless expressly left it for the jury to say whether the plaintiff was in the exercise of due care as he approached the door; and we do not think that they were misled when, in undertaking to explain his previous charge, he said:

"I meant to say that upon the evidence you would probably not be troubled much upon that question [the plaintiff's care], provided the story of the plaintiff as to his approach was accepted as the correct one, and that is all the evidence there is on that branch of the case."

For the jury heard all the evidence and the only direct evidence bearing upon the question of his approach to the door came from the plaintiff.

As bearing upon his conduct after the accident, the plaintiff was asked the following questions:

"Q. What did Dr. Abbott do for you? A. Took an X-ray; took the bandage off first, and then took an X-ray. Q. X-ray of what, your leg? A. Yes. Q. Then what did he do? A. He said there was nothing doing; keep quiet. He said you can go back home. Q. What did Dr. Abbott advise you to do, Mr. Gagne? (Exception.) A. He told me he could do nothing for me. The only thing for me to do was to keep quiet until your leg get well. (Exception to refusal to strike out the answer.) Q. What did you do after being so advised by Dr. Abbott? A. I came back to Berlin, N. H., home. Q. Did Dr. Marcou treat you then? A. Yes; I stayed in the house for a few days, and then I went back to see Dr. Marcou. I stayed home a few days, and then went back again to see Dr. Marcou. Q. And under Dr. Marcou's advice what did you do? A. Dr. Marcou advised me to keep quiet. (Exception.) Q. What did Dr. Marcou advise you to do? A. Dr. Marcou said keep away from the mill, don't work; you have got to keep quiet, or else your leg will never be well. (Exception.)"

The court instructed the jury that this testimony was not to be accepted by them as evidence of the nature of the plaintiff's injury; that it was only admitted for the purpose of showing that the course of action he took after the accident was under the advice of a physician. It is evident that the witness was illiterate, and that counsel were undertaking to have him state whether what he did after he was injured was in pursuance of and reliance upon the advice of a physician. If the answers are capable of a different interpretation, we think the jury could not have so understood them, especially after having been specifically instructed by the court as above stated. The presumption is that they followed the instructions.

The judgment of the District Court is affirmed, with costs in this court to the defendant in error.